TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,

v.

Jimmie A. FLETCHER, Appellee.

No. 7268.

Court of Civil Appeals of Texas.

Texarkana.

Aug. 16, 1960.

Atchley, Russell & Hutchinson, Howard Waldrop, Texarkana, for appellant.

Jones, Brian & Jones, C. A. Brian, Marshall, for appellee.

CHADICK, Chief Justice.

This is a venue case. The judgment of the trial court overruling a plea of privilege is affirmed.

Appellee, Jimmie A. Fletcher, brought a suit to set aside a settlement of a claim for Workmen's Compensation made with his employer's compensation insurance carrier, the appellant, Texas Employers' Insurance Association. The insurer filed a plea of privilege which Fletcher controverted invoking the exception of Sec. 7, Art. 1995, Vernon's Ann.Texas St., on the ground that the insurer procured the settlement by fraud committed in Morris County where the suit was brought.

The insurer has briefed four points of error. These points require an examination of the record to determine the absence or insufficiency of evidence to prove Fletcher relied on or was damaged by the insurer's representation that Fletcher's injury resulted in only 20% incapacity to his right leg and hip.

First to be considered are the insurer's points that there is an absence or insuffi-

ciency of evidence to show that Fletcher relied on the representation. Fletcher was the only witness to testify at the hearing. The appellant's brief sets out extracts from his testimony and then sums it up in the following manner:

"From the testimony which has been set out above, the fact is clearly demonstrated that at the time the settlement was made, plaintiff Fletcher knew as much about his condition as he did at the time he filed his Petition. He clearly testified that he was in pain and had been in pain ever since his operation, and that there had been no change in his condition for a considerable period of time before the settlement and since the settlement. Bearing that in mind and contrasting it to his testimony at the time of this hearing that he was unable to perform any work, it can clearly be assumed that he did not rely on what the claim agent said or what a doctor of the defendant may have told him."

In short, the appellant's position is that the only reasonable conclusion from the entire proof is that Fletcher knew he had a greater than 20% disability as a result of his injury and could not have believed or relied upon any statement to the contrary in making settlement.

Fletcher's testimony shows that he met the insurer's claim agent at the Lone Star Steel Company's hospital, and the agent asked him if he was ready for a settlement. He was willing, and the agent made a computation of the amount he said Fletcher was entitled to receive. Fletcher did not make any investigation of what he was entitled to, and the only advice he received was that given by the claims man. In the course of the negotiation the agent stated to him that the doctor set the disability to his leg and hip at 20%. Then after making a computation, stated that Fletcher was entitled to $1,005, which "was all I could get according to my amount of wages I made per week and my disability on my leg." Mr. Fletcher, when asked, "Did you believe the claim agent or not?", replied: "Well, I taken him to be a man of his word." In reply to a question as to whether he was relying on what the agent told him he stated: "I relied on the man working for the insurance company". When asked, "Well, did you believe the claim agent or not?", Fletcher replied, "Well, I taken him to be a man of his word. I thought I was getting a fair deal out of it." Then at another point this question was propounded: "At the time you made this compromise settlement agreement here in Morris County, Mr. Fletcher, did you not rely completely on this claim adjuster's word as to what you were entitled to as to the injury you sustained"? He answered, "Absolutely, yes, sir." The record further shows that Mr. Fletcher was 66 years of age at the time of the accident which broke the bone in his right leg near the hip joint when he fell from an ore car on October 17, 1958, during the course of his employment at Lone Star Steel Company. He had a seventh grade education. During his adult life he farmed until World War II when he began working for defense plants and for Lone Star Steel Company. He was never engaged in any work except manual labor.

Following the fall from the ore car Mr. Fletcher was placed in an ambulance and carried to the Lone Star Steel Company's hospital, where he was treated by a Company doctor. From that hospital he was transferred to a Longview hospital. In the second hospital he received surgery, along with other treatment. Compensation payments were made to him at the rate of $35 per week for 58 weeks following injury. The insurer's claim agent called on him two or three times while he was hospitalized. The evidence does not disclose whether or not the meeting at the hospital was pre-arranged for the day settlement was concluded; however, the settlement papers were signed there in the Company doctor's office. It was during discussions

against this background that the agent made the representation complained of.

■ The evidence given its most favorable construction, is sufficient to sustain the judgment if the trial judge believed it, as he apparently did. The proof supports a finding that Fletcher's disability was total and permanent at the time of settlement and at the time of trial, and at the same time supports a finding that a legal fraud had been committed by the agent's representation to Fletcher that he had received only a 20% disability to his leg and hip, and that a computation using that factor dictated that $1,005 was all that Fletcher could get by way of compensation for his injury, (in addition to the 58 weeks at $35 which had previously been paid). Among the circumstances to be considered by the trial judge is the fact that the employer and the insurer had given him prompt attention, full and satisfactory medical treatment and hospitalization, combined with a show of solicitude for his condition by frequent visits from the agent, all of which could cause a man of his background and experience to rely upon them for an accurate statement of his condition from a medical standpoint, and accept their representation as being correct though it did not correspond with his physical feeling at the time, and especially is this true in the absence of any facts that would arouse a suspicion that they would not treat him fairly.

■ Considering the circumstances the question presented is controlled by the decision in Texas State Highway Department v. Kinsler, Tex.Civ.App., 230 S.W.2d 364, writ refused. The appellant's first and second points are overruled. It is to be observed that legal fraud is shown even though the claim agent and the doctor he quoted both believed the statement made to Fletcher to be true and correct. See Duncan v. Texas Employers' Ins. Ass'n, Tex. Civ.App., 105 S.W.2d 403; Graves v. Hartford Accident & Indemnity Co., 138 Tex. 589, 161 S.W.2d 464; O'Quinn v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 219 S.W.2d 119, error refused, n. r. e., and Texas Employers' Ins. Ass'n v. Kelly, Tex. Civ.App., 261 S.W.2d 480, n. w. h.

■ The arguments in support of points 3 and 4 narrow the question presented until all that is called for is a determination of the absence or insufficiency of evidence to allow establishment of Fletcher's average weekly wage rate in accordance with Subdivision 3 of that subject in Art. 8309, Sec. 1, V.A.T.S. The Workmen's Compensation Act provides three methods by which average weekly wages may be determined. The first (Subdivision 1) is concerned with circumstances where the employee himself has worked in employment of the type he was performing at time of injury substantially the whole year immediately preceding the date of his injury. The second (Subdivision 2) is applicable to circumstances where an employee other than the claimant, but of a like class in the same general locality, has worked substantially the whole of the year preceding injury. The third method (Subdivision 3) permits a determination of a rate which is fair and just to the parties. The methods must be used in numerical order, and before one method is used to compute an average weekly wage it must be shown that the methods which precede it cannot be applied to the case. The record here shows that Fletcher worked substantially less than 300 days in the year immediately preceding his injury. Thus the first method is eliminated. The decisive question is whether Subsection No. 2 was negatived by proof. Fletcher testified that he was familiar with Morris County, having lived there all his life, and that there was no other industry in the County like Lone Star Steel Company that he knew of, raising an inference that there was no other industry employing ore car loaders in the County. He also testified there had been a lay-off at the plant that lasted at least two or three months from March 7, 1958. The standard work week at the plant was five days. Making a computation on the basis of this evidence in its most favorable light, the court might reasonably conclude that

Subsection 2 was negatived and passed out of consideration. It is suggested in Federal Underwriters Exchange v. Stewart, Tex. Civ.App., 109 S.W.2d 1031, err. dis., that very slight evidence will discharge the burden upon Fletcher in this respect. Thus, assuming a finding that Fletcher was totally an permanently disabled, the court using the third method and applying the statutory minimum of $9 per week would be compelled to conclude that Fletcher was damaged by the settlement. Appellant's points 3 and 4 must be overruled.

The judgment of the trial court is affirmed.