**CITY OF CORPUS CHRISTI, Appellant,**

**v.**

**Rudolf POLASEK, Jr., Appellee.**

**No. 186.**

Court of Civil Appeals of Texas.

Corpus Christi.

June 16, 1966.

Rehearing Denied July 11, 1966.

I. M. Singer, City Atty., Robert E. Young, Asst. City Atty., Corpus Christi, for appellant.

C. Edwin Prichard, Jr., Corpus Christi, for appellee.

OPINION

GREEN, Chief Justice.

This is a condemnation suit wherein appellant City of Corpus Christi is taking in fee a portion of appellee's tract of land in Nueces County, Texas, for construction of a drainage facility to drain lands in and near the city near that area. The tract condemned consisted of 2.884 acres, and bisects appellee's farm. The trial in the county court was before the court and jury. Appellee stipulated that appellant had the right to condemn, that all legal prerequisites had been complied with, and that the only issues to be tried were the value of the land taken, and the damages, if any, to the remainder of the tract. The jury, answering special issues, found the value of the 2.884 acres taken to be $4,326.00, and that the value of the remainder before the taking was $115,674.00, and after the taking was $96,395.00, a difference of $19,279.00. These answers total $23,605.00. The appellant having deposited $4,800.00, the amount of the commissioners' award, into court, judgment was rendered for appellee in the sum of $18,805.00. This appeal is from said judgment, and the order of the court overruling appellant's amended motion for a new trial.

Appellee at the time of these proceedings was the owner of an 80 acre tract of land lying to the south and west of the city of Corpus Christi, and a short distance outside of the city limits. This property lay in a path of a ditch which appellant was constructing in following out its Arroyo Saratoga Drainage Improvement Project, which was to serve the purpose of aiding in the drainage of a large portion of areas south and west of the city. The date of the taking of the property by appellant was

May 14, 1964, the day appellant deposited in court the amount of the award of the Special Commissioners. At the time of the trial, in March, 1965, the ditch as it ran through appellee's property, was under construction, and was of a width of approximately 20 feet at the bottom and from 52 to 60 feet at the top. When completed, the plans called for it to be 60 feet wide at the bottom and 90 feet at surface level. The right-of-way sought to be condemned in fee simple title, was 160 feet wide, and approximately 660 feet long from where it entered appellee's property to where it left. The amount of land thus taken by appellant was 2.884 acres, leaving appellee's land divided into two tracts, one approximately 42 acres, with the other containing a fraction over 35 acres. The evidence shows practically without conflict that the highest and best use of this property was to hold for future development as subdivision residence property, and during holding period to farm it in cotton and grain.

■ Appellant's first four points deal with alleged error of the court in rulings on evidence while appellee's witness Lewis, who qualified as a realtor and an expert in land appraisal, was testifying. Said witness on direct examination, after answering without objection that he had on several occasions made appraisals either for a landowner or condemning authority without thereafter being called as a witness in the suit, was asked if he knew why he had not been called in such cases. To this appellant objected as having no bearing on the case. The objection was overruled, and the witness answered that he assumed that where a condemning party secures more than one appraisal, it usually uses the lower one, and that when he makes an appraisal of market value, if his employer doesn't like it he can get another appraiser. There was no motion to strike this answer. A trial court has much discretion in admitting testimony to show either bias or lack of bias of the witness toward either party. If error were present

in the admission of such testimony, it was not sufficiently harmful to warrant reversal of this judgment. Rule 434, Texas Rules of Civil Procedure. Point One, raising this question, is overruled.

■ The trial court did not err in permitting the witness Lewis to give his opinion as to the effects of possible erosion of the sides of the ditch, and to the fact that the remainder of appellee's land would not be benefited drainage-wise by this ditch, as contended by appellant in its second and third points. Appellant in its brief says that the evidence fails to show that Lewis was qualified as an engineer to give such opinion. This objection was not made or ruled on in the trial court. We feel that Lewis with his background of engineering and appraising experience was qualified to state what he considered to be items of damage to substantiate his ultimate conclusions as to a diminution in value of the remainder of the property. It is well settled that while damages and benefits general to the public at large can not be shown, the landowner is entitled to show damage peculiar to his remainder and the condemnor to show peculiar benefits to offset the peculiar damage. State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194. Points 2 and 3 are overruled.

■ By its 4th point, appellant claims reversible error in the trial court permitting the witness Lewis to state the date that the public was informed that the Corpus Christi Country Club was going to establish its new club house and golf course in the general area of the subject property, which date was April 13, 1963, eleven months before the taking by appellant of this property. Appellant's objection was that the questioning should be restricted to what effect it may have on the market value in this case. Thereupon, in answer to appellee's question whether the announcement of the Country Club facilities going in that area would, in witness' opinion, cause any increased interest in speculation and development in that area, the

witness answered in the affirmative. This testimony was relevant to the issue of market value of the subject property eleven months later, for increased real estate speculation and activity in the real estate market certainly affects market value, as testified to by the witness. Rayburn, Texas Law of Condemnation, § 93, p. 329. Point No. 4 is overruled.

■ Points 5, 6, and 7 assign error of the trial court in overruling appellant's objections to testimony of appellant's expert witness Roberts while on cross-examination.

Appellant's witness W. A. Roberts was employed in the Right-of-Way section of the city, and qualified as an experienced and expert real estate appraiser. On direct examination, he testified that in his opinion the market value of the 2.884 acre strip before the taking on May 14, 1964, excluding crops, was $1,000.00 per acre, or $2,884.00 to which he added $500.00 for the crops growing on said strip. He testified that in his opinion the value of the remaining 77.116 acres, both before and after the taking, was $1,000.00 per acre, or $77,116.00, giving as his opinion that the value of the remainder of land was not decreased by the condemnation for drainage ditch purposes of the fee to the 2.884 acre strip.

This testimony was in contrast to that of appellee's appraiser Lewis, who testified that in his opinion, the property before the taking had a market value of $1,500.00 per acre; that the market value of the 2.884 acre strip at the time of the taking was rounded out to an even figure, $4,300.00; that the market value of the 77.116 acres remaining, before the taking, was $1,500.00 per acre, and that such value after the taking was $1,050.00 per acre.

On cross-examination, appellee, in testing the witness Roberts' qualifications for and methods of appraising land for the city, asked whether it was his job to negotiate with landowners and try to obtain the land for the least figure he could. The witness answered in the negative. Notwithstanding that the witness had answered thus, appellant objected on the ground that what his job might be in relation to negotiations has no bearing on this case as to market value. The objection was overruled. We see no error in this, especially in view of the witness' answer, and overrule point 5 raising the contention.

■ Immediately thereafter, the question was asked witness Roberts whether, once he or some one in his office decides the value of certain property, "you are not going to try to pay more than that, are you." This was objected to, as calling for the policy of the city, in so far as appraisal work (unfinished). The objection being overruled, the witness answered:

"The valuations are set on an individual property based on the studies that are printed to the staff, and in most cases are approved by the City Council before the offer is made to the individual."

The witness testified further, in answer to questions by appellant, that once the figure is approved, they try to acquire the property for the approved amount, and do not try to pay more or less, and that market value is established by the approved value. We find no error in admitting this evidence on cross-examination over the objection made by appellant, and overrule appellant's 6th and 7th points.

■ In points 8 and 9, appellant contends that the court erred in overruling its objections to testimony of appellant's witness Roberts on cross-examination concerning the value of any lot when subdivided, and concerning lot sales. We recognize the rule that opinion evidence of the market value of non-existent lots in hypothicated plats of non-existent subdivisions is too speculative to be admissible in evidence, since such evidence tends to cause the jury to value the land in terms of lots, rather than in its present state. City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808;

Lower Nueces River Water Supply District v. Collins, Tex.Civ.App., 357 S.W.2d 449, writ ref. n. r. e. We do not believe this rule to have been violated in the present case. There was no real dispute between the parties that the highest and best use of this property was to hold same for development purposes. Many instances of recent comparable sales of undeveloped acreage in this area for a price approximating the market value placed upon this acreage by appellee's witness Lewis were in evidence. Both parties had prepared and introduced in evidence plats showing their respective views as to how this land could properly be subdivided.

While the appellant's witness Roberts was under cross-examination, appellee sought to test him as to whether he arrived at a market value as of the time of the taking in 1964, or in the future after the land had been subdivided. The witness would not agree with appellee as to present value, but answered in terms of value after subdivision in the future. Finally, appellee asked him to state what he thought he could sell one of these lots for after it was subdivided. Appellant objected to any value of any lot when it might be subdivided. Although this objection was overruled, the trial court holding the testimony admissible on cross-examination in view of the prior answers of the witness, the question was not answered. In answer to a subsequent question, the witness stated that he could tell what an individual lot could be sold for today if it was in an area completely developed, and that such amount was $1800.00. After this answer, appellant again objected to reference to lot sales, and the court sustained the objection.

We agree that the evidence of the $1800.00 lot figure was improper, but since the trial court sustained the objection to reference to lot sales made after the evidence was in, and since there was no motion to strike the evidence and no further attempt on the part of appellee to inquire as to the value of any lots we find no

cause to reverse the judgment for such testimony. Rule 434 T.R.C.P. State of Texas v. Sunland Supply Company Inc., Tex.Sup. Ct.1966, 404 S.W.2d 316. Appellant's 8th and 9th points are overruled.

By point ten appellant asserts that the trial court erred in overruling its objections to the instruction given in connection with special issue 3, relating to the market value of the remainder after taking of the strip for a drainage ditch. The instruction reads as follows:

"In connection with Special Issue No. 3, your are instructed that in considering the uses to which the condemned strip is to be subjected, you are to assume that the ·condemning authority will exercise its right and use and enjoy the property taken to the fullest extent allowed by law, and that the defendant herein will no longer have any property rights in the surface of said 2.884 acre strip of land."

Appellant's six objections to the instruction assert, in substance, that it was erroneous in assuming that the former owner would be excluded from using the ditch since he would retain the right to drain his property into the public facility, and that the instruction was a general charge constituting a comment on the weight of the evidence. Appellant's brief says "we feel the effect of the Court's instruction was to build an invisible and certainly nonexistent wall between Condemnee and Condemnor's properties and instruct the jury to compensate the owner for the existence of such wall." We do not agree.

It is clear that appellant, in taking the fee simple title to the 2.884 strip of land herein, has condemned every right which appellee owned in the same, excluding certain mineral rights which are not material to disposition of this case. Appellee was required to recover all of his damages upon the trial of this case and not later on. City of La Grange v. Pieratt, 142 Tex. 23, 175 S.W.2d 243. The pre-

sumption is that the condemnor will exercise its rights and use the property taken to the full extent of the rights acquired; and this includes the corresponding right of excluding others from its use. Perkins v. State, 150 S.W.2d 157 (Tex.Civ.App., 1941, wr. dism.). The cases have held that a condemning authority cannot condemn property and pay less than the full value of it under the guise that its rights will not be exercised to the. fullest extent and that the former owner will be permitted to make some use of it. Creighton v. State, 366 S.W.2d 840 (Tex.Civ.App., 1963, wr. ref. n. r. e.); Hill v. State, 289 S.W.2d 801 (Tex.Civ.App., 1956, n. w. h.). In this case there is no showing of anything to prevent appellant from denying appellee the privilege of draining into the ditch. At most, a temporary permissive use is shown, and that is subject to appellant's legal right to change it in the future. The instruction did not actually tell the jury that appellee could not drain his property into the ditch with permission of appellant, but it did correctly state that he had no further legal property rights in the strip. This is not a case in which an owner's former right of access to a public facility, appurtenant to his remainder, is being retained in his favor. Cf. State v. Meyer, 391 S.W.2d 471 (Tex.Civ.App., 1965), affirmed 403 S.W.2d 366 (Tex. 1966). Appellant's point ten is overruled.

Appellant's points Nos. 11 to 22 inclusive relate to alleged errors in appellee's argument to the jury. Each of these points except No. 13 refer to argument to which there was no objection made, and it is appellant's contention that in such instances the court should have of its own volition stopped such alleged improper argument.

The argument appears in the record on appeal in the Statement of Facts, pages 346 to 423 inclusive. No bills of exceptions were prepared by appellant as to any portion of such arguments and submitted to the trial judge for his approval or qualification. The statement of facts was not signed by the judge.

The following agreement as to the Statement of Facts, appearing on page 425 thereof, was signed by attorneys for the parties:

"THE STATE OF TEXAS:
COUNTY OF NUECES:

The above and foregoing record having been prepared by the Official Shorthand Reporter of the County Court of Nueces County, Texas, and the same having been filed with the Clerk of said Court, and same having been on file in the papers of this cause for sufficient time for all to have an opportunity to examine same, we, Counsel for both parties hereto, agree that the above and foregoing record contains a full, true and correct transcript in question and answer form of all testimony adduced upon the trial of said cause, together with a verbatim transcript of all objections, replies, remarks, rulings, and exceptions in connection therewith; and we further agree that this record may be refiled as the Statement of Facts in this cause, and that the objections, replies, remarks, rulings, and exceptions as contained herein may be considered as and for Bills of Exception.

s/ Thomas D. McDowell
Counsel for Plaintiff
s/ C. Edwin Prichard, Jr.
Counsel for Defendant"

Appellee has filed a motion to strike the entire record of the jury argument since such transcript of the argument was not embodied in a proper bill of exceptions and presented to the trial court for approval or qualification. In Sarah Coventry, Inc. v. Blanch-Ette, Inc., Tex.Civ.App., 381 S.W. 2d 636, writ ref. n. r. e., this court, citing among other authorities Pritchett v. Highway Insurance Underwriters, 158 Tex. 116, 309 S.W.2d 46, sustained a motion to strike where the argument certified as correct by the court reporter appeared in the record on appeal only as an exhibit to the amended motion for new trial, and no bills of exception had been presented to the trial court, and attorney for appellee had not agreed that such argument could be brought for-

ward by any other method. The certificate signed by the attorneys in the present case, copied above, is not, in our opinion, "tantamount to an agreement on the part of opposing counsel to bring forward for review the objections to the argument by any other method. Only when the complaining party has presented the matter in a bill of exceptions is the opportunity afforded to his adversary and to the court for the addition of any appropriate qualification that might render harmless argument that otherwise would be improper or prejudicial." Pritchett v. Highway Insurance Underwriters, supra. To the same effect, Smith v. United Gas Pipe Line Co., 149 Tex. 69, 228 S.W.2d 139, and other authorities cited in Sarah Coventry, Inc. v. Blanch-Ette, Inc., supra. Especially is this true as to appellant's points which raise for the first time on appeal alleged error to parts of the jury argument, to which no objection was made in the trial court.

█ We hold that the complaint as to argument of counsel for appellee was not preserved in the proper way, i. e., by bills of exception, and that there was no agreement by appellee's counsel of any other method of presentation, and that points 11 to 22 inclusive are not proper before this court.

█ We have read the arguments complained of, however, and the statements and authorities cited in the briefs of both parties, and are of the opinion that even if the matter were properly presented reversible error would not be shown. We are of the opinion, and so hold, that none of the arguments complained of, including that objected to as shown by point 13, were of such a nature as to be reasonably calculated to cause or to cause the rendition of an improper judgment, nor such that it was beyond correction by means of a proper instruction by the trial court had objection been timely made. Rule 434, T.R.C.P.; Aultman v. Dallas Railway & Terminal Co., 152 Tex. 509, 260 S.W.2d 596; Texas Employers' Ins. Ass'n v. Haywood, 153 Tex.

242, 266 S.W.2d 856; Younger Brothers. Inc. v. Myers, 159 Tex. 585, 324 S.W.2d 546; Prasek v. Dudley, Tex.Civ.App., 395 S.W.2d 876 writ ref. n. r. e.; Insurance Company of North America v. Myers, Tex. Civ.App., 399 S.W.2d 932.

Appellant's points 11–22 inclusive are overruled.

Appellant's points Nos. 23, 24, 25, and 26 are to the effect that the verdict of the jury was excessive, and that there was no evidence to support the jury answers to Special Issues 1, 2, and 3. These points are presented together in appellant's brief.

Special Issue No. 1 inquired of the market value of the 2.884 acre strip condemned by appellant at the time it was condemned, to which the jury answered $4,326.-00. No. 2 asked for the market value of the remainder of the tract immediately prior to the taking, the answer being $115,-674.00. No. 3 made the same inquiry as to the remainder immediately after the taking, the jury answering $96,395.00.

In its statement and argument under these points, appellant does not question the sufficiency of the evidence to support the jury's answer to issues No. 1, as to the market value of the 2.884 acres taken, or to No. 2, as to the value of the remainder before the taking. Its sole complaint is "that the Appellee was unable to substantiate damage to the remainder in that he had no market value sales to substantiate this damage."

█ We have already discussed, to a limited extent, this ditch, its size and appearance, and some of the effects it would have, as shown by evidence, on appellee's property. Lewis, appellee's expert appraiser and realtor, testified that he considered between 70 and 80 sales in the area in arriving at his opinion of market value. He then told in detail of items and considerations which would result from the construction of this large, open, drainage ditch splitting the larger tract into two tracts which would cause a large decrease in value of the property and placed the

market value after the taking at $1050 per acre, which was $450.00 less than the value before the taking. Photographs of the ditch were introduced and Lewis testified at length why the property lost much of its value for development purposes as a result of its construction. There was evidence upon which to submit these issues, and appellant's no evidence points are overruled.

There was a difference of opinion between appellant's expert witnesses and appellee's witness Lewis as to the damages caused the remainder of the property by this condemnation. The issue of depreciated value is largely a matter of opinion evidence, and the ultimate decision is a matter for the jury. South Texas Electric Cooperative Inc. v. Ermis, Tex.Civ. App., 396 S.W.2d 955; Natural Gas Pipeline Company of America v. Towler, Tex. Civ.App., 396 S.W.2d 917. We feel that the findings of the jury of the difference in value of the property caused by the condemnation of this property were not shown to be excessive, and were supported by evidence, and by sufficient evidence. Points 23–26 inclusive are overruled.

Judgment affirmed.